2001 UT App 236

**BRIGHTON CORPORATION, a Utah corporation, Plaintiff and Appellee,**

v.

**Gregory M. WARD, an individual; Isabel M. Coats and Walter M. Coats, individually and as trustees of the Isabel M. Coats Trust dated December 10, 1985; Doug's Tree Service, Inc., a Utah corporation; and unknown persons designated as John Does 1–10, Defendants and Appellant.**

No. 20000171–CA.

Court of Appeals of Utah.

Aug. 2, 2001.

---

595

David M. Connors and James K. Tracy, LeBoeuf, Lamb, Green & MacRae, Salt Lake City, for Appellant.

Scott A. Hagen and James S. Jardine, Ray, Quinney & Nebeker, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and JACKSON, Associate P.J., and BILLINGS, J.

## OPINION

GREENWOOD, Presiding Judge:

¶1 Brighton Corporation (Brighton) filed suit seeking to prevent Gregory M. Ward (Ward) from building a cabin, alleging the cabin violated applicable restrictive covenants. Ward now appeals several rulings of the trial court that, among other things, upheld Brighton's refusal to approve building plans submitted by Ward. We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 This dispute concerns real property in Brighton, Utah, and involves two family members. In 1941, Fred and Sarah Moreton acquired property in Brighton and used a cabin there with their five children Isabel, Mary, Fred, Ed, and Sarah (collectively, the Moreton children). In 1969, Fred and Sarah Moreton conveyed the property to Brighton, a family corporation, and gave each of their five children one-fifth of the corporate stock.

¶3 In 1990, after the cabin fell into disrepair and extended family members had difficulty deciding how to use it, the Moreton children met and divided the assets of the corporation. To accomplish this, the Moreton children divided the land into three parcels and calculated the value of each sibling's stock at $53,600. The main parcel, including the family cabin, would remain in the corporation with no restrictions. The other two parcels were smaller and would be subject to restrictive covenants in favor of the main parcel. The Moreton children drew lots to divide the assets. Isabel drew one of the smaller parcels (the subject property) and $43,600 cash. Mary chose the family cabin and an obligation to pay $43,600. Fred received the other small parcel. Ed and Sarah each chose to receive $53,600 in cash.

¶4 In 1991, Brighton conveyed the subject property, by special warranty deed, to Isabel and her husband, Walter H. Coats, as joint trustees of the Isabel Coats Trust. The special warranty deed contained the following restrictive covenant, which benefitted the parcel with the family cabin:

BUILDING RESTRICTIONS. The above-described premises shall be limited to the construction of a single residential building containing not in excess of twelve hundred square feet on each floor, and

containing not more than two floors. Outside decking not under any roof shall not be included in said twelve hundred square foot limitation.

Grantor expressly reserves the right to review and approve the proposed placement, plans, and designs for any improvements to be located upon the above-described property, which approval shall be timely and not be unreasonably withheld.

¶ 5 In 1994, Ward acquired ownership of the subject property from his mother, Isabel M. Coats. Ward's deed contains the same restrictive covenant which benefits the parcel with the family cabin. Shortly after Ward acquired ownership, Brighton filed a Complaint, Lis Pendens, and Motion for Preliminary Injunction to enforce the restrictive covenant after Ward began building on the subject property. Mary Moreton Barton, Ward's aunt, was the president and sole shareholder of Brighton, which owned the lot with the family cabin.

¶ 6 On October 4, 1994, the trial court held a hearing and entered an order and declaratory judgment granting Brighton's Motion for Preliminary Injunction and ordering "no further construction be performed until the plans are approved and read into the record." Approximately eight months later, Ward filed an application for a determination that Brighton had unreasonably withheld approval of his plans. After a hearing, the trial court denied Ward's application. Almost one year later, Ward filed a renewed application for a determination that Brighton had unreasonably withheld approval of his plans. The trial court did not rule on the application, but instructed the parties to prepare for trial.

¶ 7 On December 22, 1998, Brighton filed a motion for partial summary judgment, arguing that (1) it was "reasonable" to require Ward to pay Brighton's professional costs, including attorney fees, associated with reviewing Ward's plans; (2) it was "reasonable" to require Ward to obtain an architect's certificate and approval before submitting his plans; and (3) it was "reasonable" for Brighton to apply the Foothills and Canyons Overlay Zone ordinance to Ward's plans. The trial court granted Brighton's motion on all

three grounds. The trial court's order states:

1. It is reasonable for Brighton Corporation, as a condition of reviewing future proposed plans submitted by defendant Ward, to require reimbursement of legal and professional fees and costs incurred as part of that review. However, Mr. Ward may challenge the reasonableness of such fees and costs at trial. If it is found at trial that the amount charged and paid is reasonable, then Brighton Corporation may keep the fees and costs paid.

2. It is reasonable for Brighton Corporation, as a condition of reviewing any plans from Mr. Ward, to require that the plans be signed by a licensed architect.

3. In reviewing plans submitted by Mr. Ward, it is reasonable for Brighton Corporation to apply the Foothills and Canyons Overlay Zone ordinance ("FCOZ") of Salt Lake County to Ward's proposed plans for comparison. However, to the extent FCOZ contains a one-acre minimum lot size, the parties have stipulated that the provision shall not apply. At trial, Mr. Ward may challenge the reasonableness of specific provisions of FCOZ applied by Brighton in reviewing the plans.

¶ 8 On March 3, 1999, the date scheduled for trial, the parties informed the trial court of a possible settlement. Discussion of the settlement terms took place on the record, and both Ward and Mrs. Barton testified under oath. The trial court struck the trial date.

¶ 9 On September 3, 1999, Brighton filed a Motion to Enforce Settlement Agreement, requesting a ruling that the settlement agreement governs the dispute, and seeking permission to pave the roadway across the subject property. In two separate orders, the trial court ruled that the settlement agreement was binding and enforceable and that Brighton could pave the roadway. Concerning the paving of the roadway, the trial court stated that "Brighton's request for paving the roadway was reasonable."

¶ 10 On November 17, 18, and 19, 1999, the trial court held a bench trial to determine whether the parties had complied with the settlement agreement. During the bench tri-

al, the trial court excluded testimony from Ward's expert witness, Carl Eriksson. After the trial, the trial court stated "this was a thumbs-up thumbs-down kind of trial" and ruled "thumbs down" that Ward had not complied with the settlement agreement. The trial court entered an order stating that Ward had not complied with the settlement agreement and that Brighton had not unreasonably withheld approval of Ward's plans.

¶ 11 Ward appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 Ward contends the trial court erred in determining that the proposed settlement agreement constituted a binding and enforceable contract between Ward and Brighton and in construing parts of the alleged agreement. Issues of formation, construction, and enforceability of a settlement agreement are governed by state contract law. *See Advantage Props., Inc. v. Commerce Bank, N.A.*, No. 00–3014, 242 F.3d 387, 2000 WL 1694071, at *1, 2000 U.S.App. LEXIS 29005, at *5 (10th Cir. Nov. 13, 2000). "The decision of a trial court to summarily enforce a settlement agreement will not be reversed on appeal unless it is shown that there was an abuse of discretion." *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584 (Utah Ct.App.1993) (internal quotations & citations omitted).

¶ 13 Ward further contends the trial court erred in granting Brighton's Motion for Partial Summary Judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). On appeal from a grant of summary judgment, this court "applies the same standard as that applied by the trial court." *Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah Ct.App.1987). Accordingly, this court reviews the trial court's decision for correctness. *See, e.g., Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 636 (Utah 1989).

1. Ward also claimed Judge Young should have been recused. However, under Rule 37 of the Utah Rules of Appellate Procedure, the parties subsequently filed a Stipulated Suggestion of

¶ 14 Ward argues the trial court erred in refusing to consider his latest set of plans that were submitted to Brighton. Whether the trial court should have considered Ward's latest set of plans depends upon whether a contract existed between Ward and Brighton. "The issue of whether a contract exists may present both questions of law and fact, depending on the nature of the claims raised." *Cal Wadsworth Constr. v. St. George*, 865 P.2d 1373, 1375 (Utah Ct.App. 1993). "Thus, our standard of review for this issue turns on whether the claim is one of fact or law, because a ruling whether a contract exists may embody several subsidiary rulings." *Id.*

¶ 15 Last, Ward contends the trial court erred in refusing to allow his expert to testify. "The trial court has wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard.... Under this standard, we will not reverse unless the decision exceeds the limits of reasonability." *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993).[1]

## ANALYSIS

### A. Proposed Settlement Agreement

¶ 16 Ward contends the trial court erred in determining the proposed settlement agreement constituted a binding contract between Brighton and himself. Brighton contends the settlement agreement was binding and Ward simply failed to comply.

¶ 17 On March 3, 1999, the trial court held a hearing to discuss the proposed settlement agreement. The hearing transcript indicates that both counsel for Ward and Brighton discussed the pertinent details of the "stipulated resolution [to] this case." Both Ward's and Brighton's counsel set forth the details to the trial court, some of which are outlined as follows:

1. Ward will submit plans to Brighton that are signed by an architect.

Mootness regarding the recusal. *See* Utah R.App. P. 37(a). Accordingly, we do not address this issue.

2. Brighton will review and respond to said plans within seven days of receiving them.

3. "Ward will withdraw all plans filed to date with the County and only file, in the future, plans approved by Brighton ... and [the trial court]."

4. Notwithstanding some adverse action by the County, Ward is not precluded from building on his lot, which both parties agree is larger than a half acre.

5. A special warranty deed will be prepared, at Ward's expense, to reflect the actual location of the roadway easement.

6. Brighton will receive an 18–foot waterline easement across Ward's property.

7. All other claims between the parties will be dismissed.

8. Brighton would pave the roadway at Brighton's expense, "if this goes through."

9. The structure on Ward's property will be used only as a family cabin.

After Brighton's and Ward's attorneys presented and clarified these provisions, Mrs. Barton and Ward testified under oath that each agreed to the stipulation. Ward's own testimony—an unconditional one-word acceptance of the stipulation—negates his claim that the stipulation was not an enforceable contract between himself and Brighton. Accordingly, we affirm the trial court's ruling that the settlement agreement constituted a binding and enforceable contract between the parties. *Cf. Johnson v. Utah State Tax Comm'n,* No. 99–4167, 229 F.3d 1163, 2000 WL 1279668, at *2, 2000 U.S.App. LEXIS 23175, at *9 (10th Cir. Sept. 11, 2000) (factual finding that litigant had verbally accepted settlement offer, had communicated her acceptance to her attorney, then later had merely changed her mind, was not clearly erroneous; thus, motion to enforce was properly granted); *see also Goodmansen v. Liberty Vending Sys., Inc.,* 866 P.2d 581, 584 (Utah Ct.App.1993) (stating where parties orally agree to stipulation, "[i]t is of no legal consequence that the parties have not signed a settlement agreement").

### B.  Paving of the Roadway

¶ 18 Ward claims the trial court erred when it granted Brighton's motion to pave the roadway. As noted, the settlement agreement included a provision concerning paving the roadway. The motion for permission to pave the roadway was granted when other parts of the settlement agreement had not yet been complied with. The Property Use Agreement, however, provides that only a gravel road is permitted. The portion of the settlement stipulation read into the record by Brighton's counsel, stated that the road would be paved "if this goes through." A subsequent letter from Brighton's counsel to Ward states Brighton's agreement that given the Property Use Agreement's reference to a gravel road, "Brighton can pave the road this year only with [Ward's] agreement." Accordingly, we find that the trial court erred in allowing the paving without Ward's specific agreement and remand to determine the appropriate remedy.

### C.  Granting of Partial Summary Judgment

¶ 19 Ward argues the trial court erred in granting partial summary judgment to Brighton because (1) as a matter of law, there was no basis for the trial court awarding Brighton legal and professional fees and costs; and (2) there was no legal basis for the trial court's decision to allow Brighton to apply the Foothills and Canyon Overlay Zone ordinance (FCOZ) in examining the plans or to have Ward's plans signed by an architect.

#### 1.  Legal and professional fees and costs

¶ 20 Brighton contends that it was reasonable for the trial court to award legal and professional fees and costs to Brighton on summary judgment, and therefore, the trial court did not err. Summary judgment is appropriate only when no issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). As a matter of law, reasonableness is not a proper basis for ordering attorney fees and costs; reasonableness is proper only for determining the amount. "In Utah, attorney fees are awardable only if authorized by statute or by contract." *Softsolutions, Inc. v. Brigham Young Univ.,* 2000 UT 46,¶ 41, 1 P.3d 1095 (internal quotations & citation omitted).

Brighton does not argue that a particular statute applies; thus, Brighton's only means of receiving attorney fees is by contract. Neither the special warranty deed nor the stipulated settlement agreement provide for attorney fees or costs. Therefore, we reverse the trial court's award of attorney fees and costs to Brighton.

### 2. FCOZ and architect's approval

¶ 21 Ward argues he should not have to comply with the FCOZ and he should not be required to obtain an architect's approval before submitting his plans to Brighton. Limitations under which property may be developed are generally set forth in a deed or other instrument. *See* 9 Richard R. Powell, Powell on Real Property § 60.01[2], at 60–5 (Michael Allan Wolf ed., 2000). In the present case, the special warranty deed does not mention the FCOZ, nor does it state that an architect's signature is required on the plans. The settlement agreement, however, specifically addresses both compliance with the FCOZ and the requirement that the plans be signed by a licensed architect. Thus, both requirements are binding on Ward.

### D. Trial Court's Refusal to Consider Ward's Latest Plans

¶ 22 Ward contends the trial court erred in refusing to consider his latest set of plans that were submitted to Brighton. The trial court's Order Granting Brighton's Motion to Enforce the Settlement Agreement states that "the issue to be decided at trial ... is whether the plans submitted by Mr. Ward *after the hearing on March 3, 1999* [,] complied with the criteria stated in the March 3, 1999 stipulation and incorporated letters." (Emphasis added.) Ward claims in his brief that he "submitted plans [to Brighton] in April 1999, supplemented those plans in June 1999, and made further revisions requested by Brighton in August 1999, which were submitted to Brighton for review on October 6, 1999." These submissions come within the language of the trial court's order. Furthermore, as Ward points out, there was "no deadline for submitting plans in the court's ... order." Brighton, however, refused to review Ward's later plans because

he had not paid Brighton's legal fees. Given our ruling regarding attorney fees and costs, Brighton should have reviewed and made a determination regarding all of Ward's plans, and the trial court should have considered them in determining if Brighton unreasonably refused to approve them under the terms of the special warranty deed and the parties' stipulation.

### E. Excluding Carl Eriksson's Testimony

¶ 23 Ward argues the trial court erred in refusing to allow his expert witness, Carl Eriksson, to testify at trial. Brighton contends the trial court did not err in excluding Eriksson's testimony because (1) he had not read the settlement agreement, and (2) his testimony was irrelevant. The proffer by Ward's counsel indicates that "Mr. Eriksson is qualified to testify as an expert witness" and that he would testify as follows:

2. Mr. Ward's plans submitted in April 1999 and October 1999 contain all the required components of a building plan.

. . . .

5. [Brighton's] contention ... that Mr. Ward has not provided detailed drawings of [the] north main entrance is without merit. . . . [T]he drawings are as clear and detailed as any plans he has seen. . . .

. . . .

7. With regard to ... the patio on the south side, [which Brighton contends does not comply with the FCOZ], [it meets the intent of the FCOZ.] Further, Mr. Ward has submitted plans ... which comply with [the] FCOZ.

. . . .

9. [Brighton's] contention ... that Mr. Ward has failed to provide detailed elevation drawings ... is without merit. Mr. Eriksson has reviewed ... the plans and has determined that these plans are as clear as any plans he has seen.

10. [T]here is no requirement that "support documents" be submitted to the County. . . . [T]he April 1999 plans and October 1999 plans both contain all the required components of a building plan.

11. Mr. Ward's grading/draining plan is more detailed than most plans submitted

to the County. A soils engineer and soils engineer's report is not generally required on a small project such as this.

12. [A]ll of the necessary materials are included [i]n the April 1999 plans and the June 1999 plans.

13. The plans submitted by Mr. Ward in April 1999 and June 1999 are sufficiently detailed that the cabin could be buil[t] without any information other than what is [included] on the plans.

14. Mr. Eriksson disagrees with [Brighton's expert's opinion] that the "preferred Alpine design in Utah is to retain snow on the roof with a 3/12 pitch." There is no "preferred Alpine design," and in fact, a steeper pitch is generally preferred in areas which receive large amounts of snow.

The proffer also indicates that "Mr. Eriksson is ... a fact witness." In sum, the proffer indicates that Eriksson would testify about matters going to the reasonableness of Brighton's actions and that he was qualified to do so. Whether Brighton acted reasonably is a relevant consideration, and therefore, Eriksson's testimony about that issue should have been allowed. *See* Utah R. Evid. 402 (stating relevant evidence is generally admissible); *see id.* at 702 (allowing expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue"). Therefore, we hold the trial court exceeded the bounds of its discretion in excluding Eriksson's testimony.

## CONCLUSION

¶ 24 Ward accepted the stipulated settlement agreement, and therefore we affirm the trial court's ruling that the settlement agreement constituted a binding and enforceable contract between the parties. However, because the Property Use Agreement provides that only a gravel road is permitted, and because Brighton acknowledges that Ward's prior approval was necessary in order to pave the road, we reverse the trial court's decision to grant Brighton permission to pave the roadway and remand to determine an appropriate remedy.

¶ 25 As a matter of law, reasonableness is not a basis for ordering attorney fees and costs. Thus, we reverse the trial court's award of attorney fees and costs to Brighton in the partial summary judgment.

¶ 26 The settlement agreement specifically addresses compliance with the FCOZ and the requirement that the plans be signed by an architect; thus, both provisions are binding on Ward.

¶ 27 Brighton should have reviewed and made a determination regarding all of Ward's plans, and the trial court should have considered those plans in determining if Brighton unreasonably refused to approve them under the terms of the special warranty deed. Further, we hold the trial court exceeded its discretion in excluding Eriksson's testimony.

¶ 28 Accordingly, we remand for a determination of a remedy for the paving of the roadway and for other proceedings consistent with this opinion.

¶ 29 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.