2001 UT App 397

**CAMPBELL, MAACK & SESSIONS, a Utah professional corporation, Plaintiff, Appellee, and Counter-defendant,**

v.

**Janice L. DEBRY, Defendant, Appellant, and Counter-claimant.**

**No. 990810–CA.**

Court of Appeals of Utah.

Dec. 13, 2001.

---

Jeffrey C. Howe, Salt Lake City, for Appellant.

Richard D. Burbidge, Stephen B. Mitchell, and Jason D. Boren, Burbidge & Mitchell, Salt Lake City, for Appellee.

Before JACKSON, Associate P.J., and DAVIS and THORNE, Jr., JJ.

## OPINION

THORNE, Jr., Judge:

¶ 1 Appellant Janice Debry appeals from the trial court's order denying her motion for an extension of time, pursuant to rule 56(f) of the Utah Rules of Civil Procedure, and granting Campbell Maack & Sessions's (CMS) Motion for Summary Judgment on all claims. We affirm.

## BACKGROUND

¶ 2 In January 1994, following four years of marriage, Debry retained CMS to represent her in a divorce action. While Debry and CMS executed no written contract concerning the price of CMS's services, Debry orally agreed to pay CMS in accordance with its regular hourly rate, which Debry understood to be $185.00 per hour, plus expenses.

¶ 3 In August 1996, the trial court entered the final divorce decree, awarding Debry $5,000.00 per month in alimony and marital assets valued at $652,847.00. The trial court also ordered the marital home sold and the resulting proceeds equally distributed. For their services, CMS's charged Debry a total of $118,394.31, which Debry asserted to both the trial court and to a previous panel of this court was reasonable.

¶ 4 In September 1996, CMS filed suit for breach of contract seeking to enforce its agreement with Debry. Debry responded to the complaint first with a pro se answer, then with a verified counterclaim asserting that CMS had committed legal malpractice during the course of her divorce proceedings. Debry later amended her counterclaim, replacing her verified pleading with an unverified pleading. The trial court subsequently ordered the parties to complete all discovery by May 28, 1999, and also ordered that all dispositive motions be submitted by that date. On May 28, 1999, CMS filed a motion for summary judgment seeking dismissal of Debry's counterclaim, as well as judgment in favor of its breach of contract claim. Debry responded with a motion for additional time, pursuant to Rule 56(f), but filed neither a response to CMS's summary judgment motion nor an affidavit setting out the existence of genuine issues of material fact.

¶ 5 On August 12, 1999, the trial court denied Debry's motion for an extension of time and granted CMS summary judgment on all claims. Debry now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Debry first argues that the trial court erroneously denied her motion for an extension of time to respond to CMS's summary judgment motion. "[W]e review a trial court's decision to grant or deny a rule 56(f) motion under the abuse of discretion standard. 'Under this standard, we will not reverse unless the decision exceeds the limits of reasonability.' " *Crossland Sav. v. Hatch,* 877 P.2d 1241, 1243 (Utah 1994) (citation omitted).

¶ 7 Debry next argues that the trial court's order granting CMS summary judgment dismissing her counterclaim for legal malpractice was improper. "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.,* 2001 UT 54,¶ 9, 28 P.3d 669.

¶ 8 Debry further argues that the trial court erred in granting CMS summary judgment on its breach of contract claim. "On appeal from a grant of summary judgment, this court applies the same standard as that applied by the trial court. Accordingly, this court reviews the trial court's decision for correctness." *Brighton Corp. v. Ward,* 2001 UT App 236,¶ 13, 31 P.3d 594 (internal quotations and citations omitted).

## ANALYSIS

¶ 9 Debry argues that the trial court abused its discretion in denying her motion for an extension of time. "Rule 56(f) provides that a party opposing summary judgment may file an affidavit stating reasons why [s]he is presently unable to submit evidentiary affidavits in opposition to the moving party's supporting affidavits." *Reeves v. Geigy Pharm., Inc.,* 764 P.2d 636, 639 (Utah Ct.App.1988). To qualify for relief under Rule 56(f),

> "the opposing party must show to the best of his [or her] ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to discovery procedures under the Rules; and that [s]he is desirous of taking advantage of these discovery procedures."

*Callioux v. Progressive Ins. Co.,* 745 P.2d 838, 840–41 (Utah Ct.App.1987) (quoting 2 James Wm. Moore ET AL., Moore's Federal Practice ¶ 56.24 (2d ed.1987)). Moreover, the trial court will examine (1) whether the party submitting the motion is merely attempting to gain "additional discovery time to uncover purely speculative facts after substantial discovery has already been conducted," and (2) "whether the other party has appropriately responded to discovery requests." *Reeves,* 764 P.2d at 639. Finally, the trial court will examine whether the affidavit supporting a Rule 56(f) motion adequately "explain[s] how the continuance will aid [her] opposition to summary judgment." *Callioux,* 745 P.2d at 841.

¶ 10 Here, Debry submitted her motion and supporting affidavit, stating that "until Mrs. Debry's expert . . . has reviewed all pertinent information on this motion, she cannot express an opinion regarding the reasonableness of plaintiff's attorneys' fees or the quality of the work performed by plaintiff." [1] We have reviewed the record and, for the following reasons, we conclude that the trial court correctly determined Debry's Rule 56(f) motion was without merit. [2]

¶ 11 First, the affidavit submitted in support of Debry's motion failed to explain why she was unable to submit evidentiary affidavits in opposition to CMS's motion for summary judgment. *See Reeves,* 764 P.2d at 639.

¶ 12 Second, the evidence shows that Debry's expert possessed sufficient information to form an opinion on the reasonability of CMS's fees and submit an affidavit stating that opinion in opposition to CMS's motion. Debry does not dispute that she first received copies of CMS's itemized billing statements during her divorce proceeding, nor does she dispute receiving this same information again as a result of her discovery requests during this litigation. Moreover, there is evidence that CMS timely delivered copies of the specific reports in question to Debry's trial counsel. Thus, not only has Debry failed to show that the information was " 'within [CMS]'s *exclusive knowledge or control,*' " *see Callioux,* 745 P.2d at 840 (citation omitted) (emphasis added), the evidence clearly supports the trial court's ruling that her expert had sufficient information either in her possession or available to her to form an opinion in regard to CMS's summary judgment motion. [3]

¶ 13 Third, Debry had nearly three years to conduct discovery, which, under these cir-

---

1. The pertinent information referred to in the motion, and ostensibly not in Debry's possession prior to receiving CMS's summary judgment motion, was in the form of handwritten time sheets completed by CMS attorneys who had worked on Debry's divorce case.

2. *Compare Crossland Sav. v. Hatch,* 877 P.2d 1241, 1243–44 (Utah 1994) (concluding that the trial court had not abused its discretion even though plaintiffs filed their motion for summary judgment a mere four months after filing their complaint), *with Cox v. Winters,* 678 P.2d 311, 314 (Utah 1984) (concluding that the trial court had abused its discretion in denying plaintiff's Rule 56(f) motion because the parties were "in the midst of discovery"). Here, CMS filed its complaint in September of 1996. The trial court permitted discovery through May of 1999, a period of over two and one-half years. It was only after the completion of this substantial discovery period that CMS filed its summary judgment motion.

3. It is also worth noting that the expert involved in the instant controversy is the attorney who, while representing Debry on appeal from her divorce proceeding, represented to this court that CMS's fees were reasonable.

cumstances, was more than adequate to uncover any available evidence that would support her malpractice claim. *See Crossland Sav.*, 877 P.2d at 1243 (holding "the trial court need not grant rule 56(f) motions that are dilatory or lacking in merit").

¶ 14 Finally, the plain language of Debry's motion failed to "explain how the continuance [would have] aid[ed her] opposition to summary judgment." *Id.* at 841. Accordingly, the trial court's decision did not exceed its permissible range of discretion.

¶ 15 Debry next asserts that the trial court erred in granting CMS's summary judgment motion and dismissing her counterclaim. Debry argues (1) summary judgment was precluded because genuine issues of material fact exist; (2) the trial court improperly shifted the burden of proof; and (3) the trial court improperly found that Debry had not been damaged by CMS's representation.

¶ 16 Debry's principal argument is that genuine issues of material fact exist that should have precluded the trial court's grant of summary judgment. "Summary judgment is appropriate when the record indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994). However, "when a party . . . fails to file any responsive affidavits or other evidentiary materials allowed by Rule 56(e), the trial court may properly conclude that there are no genuine issues of fact unless the face of the movant's affidavit affirmatively discloses the existence of such an issue." *Franklin Fin. v.*

*New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983) (footnote omitted).

¶ 17 Here, in the face of CMS's motion for summary judgment, Debry failed to submit either an affidavit or any other acceptable evidentiary materials to rebut the motion.[4] Accordingly, the trial court properly assumed that no genuine issues of material fact existed and correctly proceeded to determine whether CMS was entitled to summary judgment as a matter of law.

¶ 18 Debry next argues that, after viewing CMS's summary judgment motion and supporting materials, the trial court erroneously shifted the burden of proof to her, and subsequently erred in determining that she had suffered no damages as a result of CMS's representation. Under Rule 56(e), once the proponent of summary judgment establishes a prima facie case, the burden shifts to the opponent to provide some evidence in opposition to the motion and in support of the essential elements of her claim. *See* Utah R. Civ. P. 56(e); *cf. Thayne v. Beneficial Utah, Inc.*, 874 P.2d 120, 124 (Utah 1994) (stating that "the plaintiff[ ] has the ultimate burden of proving all the elements of his cause of action"). Moreover, for Debry to prevail on her claim of legal malpractice, she must prove, "(i) an attorney-client relationship [existed]; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996).[5]

---

4. Debry argues that the trial court should have treated her verified counterclaim as an affidavit creating genuine issues of material fact precluding summary judgment. While we understand that under certain circumstances a verified pleading may be viewed as an affidavit for purposes of opposing summary judgment, *see Pentecost v. Harward*, 699 P.2d 696, 698 (Utah 1985), we conclude that Debry's counterclaim does not qualify. First, Debry failed to raise this claim below, thereby waiving it on appeal. *See Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983). Second, prior to CMS submitting its summary judgment motion, Debry filed an amended nonverified counterclaim. Once a party has amended a pleading, the amended pleading supercedes the original pleading, and the original pleading performs no func-

tion in the case. *See 6 Federal Practice & Procedure*, Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 1476 (1990). Thus, absent Debry's resubmission of the verified counterclaim, the trial court was not in a position to examine its impact on CMS's motion. Finally, we have reviewed the verified counterclaim and conclude that it does not conform with the requirements set forth in rule 56(e). *See* Utah R. Civ. P. 56(e).

5. For purposes of our analysis, we limit our examination to the issue of damages. Because we conclude Debry suffered no damage as a result of CMS's representation, we conclude Debry's argument concerning causation is moot.

¶ 19 We have reviewed the record and conclude the trial court correctly shifted the burden to Debry. CMS submitted its motion for summary judgment, supported by both a well-drafted memorandum and a plethora of supporting documents. CMS presented evidence that, inter alia, as a result of CMS's representation, Debry had received two-thirds of the value of the marital property in the divorce decree. Additionally, CMS established that once Debry's divorce was final, she filed a personal injury action against her former husband, which was pending at the time of CMS's motion. Finally, CMS's motion also established that Debry had negotiated and entered into a settlement agreement and release with her former husband, settling all of the contractual claims raised in her counterclaim against CMS.

¶ 20 At a minimum, CMS presented a prima facie case [6] that Debry had suffered no damage as a result of its representation. Accordingly, for Debry's claims to survive CMS's motion, the trial court properly required Debry to provide some evidence in support of the essential elements of her claim. *See* Utah R. Civ. P. 56(e).[7] In failing to submit either an affidavit or any other evidentiary materials, Debry effectively conceded that no genuine issues of material fact existed and accepted the facts presented by CMS. Therefore, the trial court properly concluded that Debry had suffered no damages as a result of CMS's representation.

¶ 21 Debry next argues that the trial court erroneously granted CMS summary judgment on its breach of contract claim. "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair*, 2001 UT 20 at ¶ 14, 20 P.3d 388. Furthermore, under Rule 56(e), once a party establishes a prima facie case, the burden shifts to the opposing party to provide some evidence in opposition to the

essential elements of the proponent's claims. *See* Utah R. Civ. P. 56(e).

¶ 22 Here, it is undisputed that Debry entered into a contract with CMS for representation during her divorce action, wherein she agreed to pay CMS reasonable fees and costs for their representation. Moreover, CMS, through its summary judgment motion, established a prima facie case that they had performed the essential terms of the contract and that Debry had subsequently failed to meet her obligations under the contract. Finally, CMS established, through the documents supporting its summary judgment motion, that it had been damaged by Debry's failure to pay, thereby establishing each of the essential elements of its claim. Thus, in the absence of contrary evidence, the trial court correctly granted CMS summary judgment on its breach of contract claim.

¶ 23 Debry further alleges that the trial court erred in awarding CMS prejudgment interest.

> Under Utah law, prejudgment interest represents an amount awarded as damages due to the defendant's delay in tendering an amount clearly owing under an agreement or other obligation. A court may award prejudgment interest where the loss is fixed as of a particular time and the amount of the loss can be calculated with mathematical accuracy.

*Baker v. Dataphase*, 781 F.Supp. 724, 731 (D.Utah 1992) (citations omitted). Here, CMS submitted its bill to Debry in August of 1996, yet she chose to "delay in tendering [the] amount clearly ow[ed] under [the] agreement[.]" *Id.* Based on these facts, the trial court could properly find that a debt existed on that agreement and that Debry had delayed in tendering the amount due. Moreover, the court had sufficient information to "calculate[ the loss] with mathematical accuracy" and to fix the loss "as of a particular time." *Id.* Accordingly, the trial court did

---

6. "A prima facie case has been made when evidence has been received ... that, in the absence of contrary evidence, would entitle the party having the burden of proof to judgment as a matter of law." *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388.

7. This analysis also extends to Debry's contention that the trial court erred in requiring Debry to come forward with facts establishing the standard of care to be applied to legal malpractice claims.

not err in awarding CMS prejudgment interest.[8]

¶ 24 Finally, Debry claims that comments made by the trial court prior to issuing its summary judgment ruling demonstrate reversible bias or prejudice. "[A] party alleging judicial bias or prejudice must first file an affidavit to that effect in the trial court." *Wade v. Stangl*, 869 P.2d 9, 11 (Utah Ct.App.1994). The affidavit must show that "sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir.2000). After reviewing the record, we can see no indication that Debry complied with this requirement. Therefore, absent a claim of plain error or extraordinary circumstances, we will not consider her claim. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

¶ 25 Were we to consider Debry's claim of bias on the part of the trial court, we would begin with the understanding that " '[if] bias' and 'partiality' [are to] be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will." *In re J.P. Linahan, Inc.*, 138 F.2d 650, 651 (2d Cir.1943). In fact, " '[t]he traditional view is that if a judge can be disqualified for bias following a comment ... during the court proceedings, there is no limit to disqualification motions and there would be a return to "judge shopping." ' " *Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 767 P.2d 538, 546 (Utah 1988) (quoting L. Abramson, *Judicial Disqualification Under Canon 3C of the Code of Judicial Conduct*, 23 (1986)). Moreover, for "alleged bias and prejudice to be disqualifying [it] must ... result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grin-*

*nell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Mere "expressions of impatience, dissatisfaction, annoyance, and even anger," are insufficient to establish the existence of bias or partiality. *Id.* at 555–56, 114 S.Ct. at 1157.

¶ 26 Finally,

because [a judge's] fact-finding is based on his estimates of the witnesses, of their reliability as reporters of what they saw and heard, it is his duty, while listening to and watching them, to form attitudes towards them. He must do his best to ascertain their motives, their biases, their dominating passions and interests, for only so can he judge of the accuracy of their narrations.

. . . .

He has an official obligation to become prejudiced in that sense. Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.

*Linahan*, 138 F.2d at 653–54 (footnote omitted).

¶ 27 Here, after examining the record,[9] we conclude that not only did Debry fail

---

8. Debry also argues that it was error for the trial court to award prejudgment interest in the form of a percentage rather than as a fixed amount. However, because prejudgment interest covers a fixed period of time, the form of the award is of little consequence.

9. Debry points only to the following comment from the trial court in support of her argument:

I also note that the advantaged position I'm in in this case might permit me to make what might be a comment, an extrajudicial comment—and I say it's extrajudicial because it doesn't bear on my decision to grant this motion. But under certain circumstances I feel compelled to maybe move beyond what might

to meet the threshold requirement, i.e. submission of an affidavit alleging judicial bias or prejudice to the trial court, *see Wade*, 869 P.2d at 11 (stating the preservation rule "applies where the bias or prejudice of a trial judge is alleged for the first time on appeal"), but that there is no indication of extra-judicial prejudice in the record. We therefore find no merit in Debry's argument.[10]

## CONCLUSION

¶ 28 Accordingly, we affirm the trial court's order denying Debry's motion for an extension of time. We also affirm the trial court's decision granting CMS summary judgment, and awarding CMS prejudgment interest.

¶ 29 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JAMES Z. DAVIS, Judge.

have to be said to get the job done, and here goes.

This is a very troubling case and while I'm not going to draw any legal conclusions about Mrs. Debry's motives or her conduct, her claims in this case strike me as being beyond the product of mere misinformation or beyond being the product of a lack of communication between lawyer and client. Her lack of candor in the divorce case coupled with what I view as the absence of merit to her claims in this case lend considerable persuasive power to Mr. Burbidge's views about her motives and about her apparent willingness to manipulate the judicial system in a manner that is almost beyond gamesmanship, but so much for that.

10. It is clear from the record and from Judge Nehring's comments that, before he came to a decision in this case, he examined all of the evidence and listened to all of the legal arguments presented. Moreover, nothing in the record supports Debry's claim that Judge Nehring harbored any extra-judicial prejudice toward her or her case.