**2015 UT App 60**

# THE UTAH COURT OF APPEALS

JARED WILLIAM FULLMER,
Petitioner and Appellant,
*v.*
KELLI ANN FULLMER,
Respondent and Appellee.

Opinion
No. 20130060-CA
Filed March 19, 2015

Second District Court, Farmington Department
The Honorable Michael G. Allphin
No. 104701561

Mary C. Corporon, Attorney for Appellant

J. Ed Christiansen and Nathan Whittaker,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES J. FREDERIC VOROS JR. and KATE A. TOOMEY
concurred.

CHRISTIANSEN, Judge:

¶1     Jared William Fullmer (Father) appeals from the district
court's award of primary custody of the parties' two children to
Kelli Ann Fullmer (Mother). Father argues that the case should be
remanded for a new trial on the custody issue because the district
court judge failed to recuse himself sua sponte after the judge
indicated that the custody evaluator was "a prominent and very
credible expert." Father also asserts that the district court abused
its discretion by altering the parties' pretrial custody arrangement
and awarding primary custody to Mother. We affirm.

BACKGROUND

¶2     Father and Mother were married in July 2003. Two children were born during the marriage. In September 2010, Father filed a petition for divorce.

¶3     The parties appeared before a domestic-relations commissioner, who recommended that Father be awarded temporary primary custody of the two children. The district court adopted the commissioner's recommendations and entered temporary orders designating Father as the primary custodial parent. Mother was awarded parent-time consisting of Wednesday overnights, shared holidays, and a majority of weekends.

¶4     Mother and Father stipulated to the appointment of Dr. Natalie Malovich as the custody evaluator in the case. The court then ordered Dr. Malovich to conduct a child-custody evaluation. After Dr. Malovich completed her evaluation, she participated in a custody settlement conference with the parties. At that conference, Dr. Malovich recommended that the parties share joint legal and physical custody but recommended that Mother be the primary custodial parent. Under Dr. Malovich's recommendation, Father would receive parent-time, consisting of every other weekend and two weeknight overnights on alternating weeks. Dr. Malovich also recommended shared holidays and that Father be awarded any "non-holiday" days that the children had off from school. The parties were unable to reach an agreement and the case was certified for trial.

¶5     After the settlement conference, Mother moved to have Dr. Malovich prepare a written report of her custody evaluation and recommendation. In that report, Dr. Malovich stated her belief that Father was taking high quantities of pain medication and explained her concern that this could lead to substance-abuse problems in the future. After receiving a copy of Dr. Malovich's report, Father hired an expert to review Dr. Malovich's custody evaluation and examine her methodology.

¶6 Before trial, Father moved to exclude Dr. Malovich's report and to limit her testimony. Father argued that Dr. Malovich's report was unreliable, that she should not be allowed to comment on Father's prescription-drug use because she had no specialized training in prescription drugs, that Father's prescription-drug use was irrelevant to the custody determination, and that Dr. Malovich had acted unlawfully in obtaining information on Father's history of prescription-drug use.

¶7 In September 2012, the court held a bench trial to determine custody of the children, the children's primary residence, parent-time, and child support. At the beginning of the trial, the district court judge addressed Father's motion in limine. In denying the motion, the district court judge stated that Father appeared to be "taking swipes at a prominent and very credible expert." The judge also criticized the arguments raised in Father's motion, stating, "I guess it's up to you to determine whether or not you think I'm stupid." Father did not object to these comments when they were made and did not file a motion to disqualify the district court judge pursuant to rule 63 of the Utah Rules of Civil Procedure.

¶8 The court denied Father's motion to exclude Dr. Malovich's report and testimony, and trial proceeded. After trial, the court orally announced its findings of fact and conclusions of law. The court memorialized that ruling and entered a decree of divorce on December 20, 2012. In the decree, the court ordered that the parties share joint legal and physical custody of their children and designated Mother as the primary custodial parent. Father was awarded liberal parent-time similar to that recommended by Dr. Malovich. Father appeals.

ISSUES AND STANDARDS OF REVIEW

¶9 Father contends that the district court judge should have recused himself sua sponte after commenting on the qualifications of the custody evaluator. "Determining whether a trial judge

committed error by failing to recuse himself or herself under the Utah Code of Judicial Conduct . . . is a question of law, and we review such questions for correctness." *State v. Alonzo*, 973 P.2d 975, 979 (Utah 1998).

¶10     Father also argues that the district court abused its discretion in altering the existing temporary custodial arrangement and awarding primary custody to Mother. A district court is given broad discretion in making child-custody awards, *Myers v. Myers*, 768 P.2d 979, 982 (Utah Ct. App. 1989), and its decision will not be disturbed absent a showing of an abuse of discretion or manifest injustice, *Schindler v. Schindler*, 776 P.2d 84, 87 (Utah Ct. App. 1989). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a).

## ANALYSIS

### I. The District Court Judge Did Not Plainly Err in Not Recusing Sua Sponte.

¶11     At oral argument before this court, Father stipulated that he raises this argument for the first time on appeal. Having failed to properly preserve the issue of judicial bias for this court's review, Father seeks review under the plain error doctrine. To prevail in a plain error review, an appellant must show that "'(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful.'" *State v. Davis*, 2013 UT App 228, ¶ 10, 311 P.3d 538 (quoting *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993)). "If any one of these requirements is not met, plain error is not established." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (citation and internal quotation marks omitted). Father claims that the district court judge erred "by failing to recuse himself after giving

a speech on the credibility of the [custody] evaluator before the witness took the stand."[1]

¶12 Utah's Code of Judicial Conduct require a judge to disqualify himself in any proceeding where "the judge's impartiality might reasonably be questioned."[2] Utah Code Jud. Conduct R. 2.11. The question of a judge's impartiality is determined by viewing the question through the eyes of "a reasonable person, knowing all the circumstances." *West Jordan City v. Goodman*, 2006 UT 27, ¶ 22, 135 P.3d 874; *see also Madsen v. Prudential Fed. Sav. & Loan Ass'n*, 767 P.2d 538, 547 (Utah 1988) (concluding that there was no evidence of disqualifying bias when the judge's remark was "[v]iewed in its entirety and in the context

---

1. At oral argument before this court, Father's counsel argued for the first time that the district court judge's statement that Father's expert was "thick" was clearly a comment on Father's expert's mental abilities and supports Father's main argument that the judge was unfairly biased. Generally, this court will not consider arguments raised for the first time at oral argument. *See McCleve Props., LLC v. D. Ray Hult Family Ltd. P'ship*, 2013 UT App 185, ¶ 11 n.2, 307 P.3d 650. In any event, viewed in context, the district court's statement was a comment on the expert's accent and not on his intellectual capability.

2. Utah's Code of Judicial Conduct "contemplates disqualification where, for instance, a judge has prior knowledge of evidentiary facts, is related to a party or an attorney, has a close social or professional relationship with a party or an attorney, was involved in the case at hand before becoming a judge, or has a financial or property interest that could be affected by the outcome of the proceeding. In other words, the bias or prejudice must usually stem from an extrajudicial source, not from occurrences in the proceedings before the judge." *State v. Munguia*, 2011 UT 5, ¶ 17, 253 P.3d 1082 (emphasis omitted) (citation and internal quotation marks omitted).

in which that statement was made"). "Each judge brings to the bench the experiences of life, both personal and professional. A lifetime of experiences that have generated a number of general attitudes cannot be left in chambers when a judge takes the bench." *Madsen*, 767 P.2d at 546. "Mere 'expressions of impatience, dissatisfaction, annoyance, and even anger,' are insufficient to establish the existence of bias or partiality." *Campbell, Maack & Sessions v. Debry*, 2001 UT App 397, ¶ 25, 38 P.3d 984 (quoting *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)).

¶13    According to Father, "the court below commented extensively" on the "strength of the custody evaluator" and, "[w]ithout knowing what evidence would be presented, the [judge] made clear he already planned to give significant weight to whatever [the custody evaluator] said," placing Father "at a serious disadvantage." When Father made it clear that he intended to use his own expert to rebut Dr. Malovich's recommendation and report, Father claims the court "offered disdain for [Father's] efforts" and stated that it was "'up to [Father] to determine whether or not [he] thinks [the court] is stupid.'"

¶14    But Father mischaracterizes what he calls the district court judge's "speech on the credibility" of Dr. Malovich. In viewing the comments in context, a reasonable person would conclude, as we do, that the judge's comments did not evince any disqualifying bias. At the beginning of trial, the district court judge addressed Father's motion in limine to exclude Dr. Malovich's custody evaluation report and to prevent her from testifying. The district court judge stated,

> You filed some interesting motions lately sending me copies of things that you don't want me to consider, which is interesting; arguing about reports that are not generally admitted into evidence anyway; taking swipes at a prominent and very credible expert; making argument that assumes that the Court is

either too stupid or lacks experience in these types of matters.

I've been on the bench 23 years, hearing these kinds of cases. I know what I'm doing and I know what the most important things are in these cases. I guess it's up to you to determine whether or not you think I'm stupid, but based on what I read in your memoranda, the drug issue . . . that you've been so involved in is an extremely small part of Dr. Malovich's factual basis for her conclusion and for her recommendation.

It looks like it was just blown way out of proportion and, now, what was a very small issue becomes a very great one. I don't accept the petitioner's premise here that Dr. Malovich should be precluded from testifying to what she found. It's legitimate. . . .

[Father] and his witnesses can tell me, all day long, that regular controlled substance use, pain killers, don't affect the way a person approaches life, relationships, parenting, jobs, etc. I have twenty-three years of experience that tell me otherwise and, exactly how it affects this particular case and these particular kids, that's something that I'm willing to listen to and make a determination, but I, certainly, don't accept the basic premise that drug use of any kind, whether it's legitimate prescribed pain killers, [doesn't] have any effect on what we're doing here because I think they, probably, do. . . .

I want you both to know that I don't come to this case with any preconceived ideas about what the outcome may be. I've learned, too many times, that what looks like, on the outside, once you get into it, you hear the evidence, the testimony, it becomes a totally different scenario.

> I always have and I will continue to do what I think is [in] the best interests of the children. That's the most important thing here. . . .
>
> Earlier, I indicated that I respected Dr. Malovich's credentials and her expertise in this area. However, she has testified in my Court before and I have found those credentials and her expertise to be very good. Do I always agree with her? Absolutely not. Do I always follow her recommendations, absolutely not. I believe she works hard at providing honest information that will assist the Court and, as I said, sometimes, it's information that I find very helpful and, other times, I have a different opinion than she does after I've heard all the evidence.

¶15    The judge's comment, "I guess it's up to you to determine whether or not you think I'm stupid," was in response to Father's motion in limine in which he argued that Dr. Malovich's opining about his drug use should be excluded. The comment was not directed at Father obtaining his own expert to challenge the methodology of Dr. Malovich's custody evaluation but was in response to Father's argument that his prescription-drug use was irrelevant to a custody determination. The district court judge explained, "[I] certainly, don't accept the basic premise that drug use of any kind, whether it's legitimate prescribed pain killers, [doesn't] have any effect on what we're doing here because I think they, probably, do." We agree with Father to this extent: a judge should not act in a way to suggest that he or she has taken personal offense at a motion based on legal grounds. Nevertheless, we conclude that the judge's comments here do not demonstrate bias.

¶16    Turning to the judge's comment about Dr. Malovich being a "credible expert," the district court judge clarified his statement: "[S]he has testified in my Court before and I have found those credentials and her expertise to be very good. Do I always agree with her? Absolutely not. Do I always follow her

recommendations, absolutely not." Viewed in context, the district court judge's comments addressed Father's motion in limine and explained the court's ruling that Dr. Malovich could testify to the findings in her custody evaluation because of her "credentials and her expertise in this area." The judge also explained that he did not have any "preconceived ideas" about Dr. Malovich's custody recommendation or her report. None of these comments reveal any favoritism toward Mother or any ill will toward Father. Accordingly, the judge's comments on Dr. Malovich's credibility do not rise to the level of unacceptable bias or prejudice and do not demonstrate any error committed by the district court judge. *See Debry*, 2001 UT App 397, ¶¶ 25–27.

¶17    Moreover, Father has failed to show how his claimed error should have been obvious to the district court. Father did not file a motion to disqualify the district court judge, nor did Father bring his claims of unfair bias to the attention of the judge. Father has also failed to cite settled appellate law sufficient to put the district court judge on notice of any obligation to sua sponte recuse himself based on the court's comments discussed above.

¶18    Because the district court judge had no duty to recuse and Father has failed to establish that any obvious error occurred, Father's plain error claim fails. *See State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276.

## II. The District Court Did Not Abuse Its Discretion in Awarding Primary Custody of the Children to Mother.

¶19    Father argues that the district court abused its discretion by altering the temporary custody arrangement and awarding primary custody to Mother. Mother requests that we reject Father's argument because Father has failed to marshal the evidence that was presented at trial. However, in light of our supreme court's explanation of marshaling in *State v. Nielsen*, 2014 UT 10, 326 P.3d 645, we decline Mother's request to summarily reject Father's argument. Instead, "we address the merits of [Father's] arguments

and consider any marshaling deficiencies as part of our overall evaluation of whether [Father] has met his burden of persuasion on appeal." *Tobler v. Tobler*, 2014 UT App 239, ¶ 15, 337 P.3d 296.

¶20 Father argues that due to the district court judge's bias, the court abused its discretion by awarding the custody "exactly as proposed by Malovich" and granting primary custody to Mother. Father identifies two errors he perceives in the court's decision: first, that the "court's bias in favor of Malovich" led the court to adopt unsupported findings of fact and "bizarre conclusions" and, second, that the court abused its discretion in altering the existing temporary custody arrangement by relying on Dr. Malovich's testimony instead of Father's expert's opinion.

¶21 We disagree with Father's claim that the district court judge awarded custody "exactly as proposed" by Dr. Malovich. Father testified at trial that he believed Dr. Malovich's proposed custody schedule was too disruptive and that the children needed a sense of stability. In fact, the court agreed with Father and rejected Dr. Malovich's recommendation that Father have custody on different nights on alternating weeks. Instead, the court ordered that the parties attempt to agree to one weekday per week where Father would have the children for the night and until the following morning, and if they could not agree on a day, the court would designate Father's midweek overnight day.

¶22 In its findings, the district court found that both Mother and Father had suitable residences; that at the time of trial, both parents were actively involved in their children's lives and displayed strong motivation to parent the children; that the children would benefit from an ongoing positive relationship with both Mother and Father; and that the children appeared to have "an equal strength bond to both of their parents." However, the court also found that Mother maintained steady full-time employment, while the court had "serious concerns" about Father's continued attempts to develop his own business; that Father had experienced emotional difficulties during the parties' separation and had

"unnecessarily involved the children in his emotional distress"; and that though the children were "doing well" in the custodial arrangement under the temporary order, the "current amount of contact that the parties' youngest daughter has with [Mother] is not adequate for [the child's] needs."

¶23    First, Father has not demonstrated that the district court's findings were unsupported by the evidence. Father claims that some of the court's findings were "out of date" and based on past conduct, but Father has failed to show why the court could not consider findings that were based on previous events. Utah Code section 30-3-10 states that "the court shall consider the best interests of the child and, among other factors the court finds relevant, . . . the past conduct . . . of each of the parties." Utah Code Ann. § 30-3-10(1)(a) (LexisNexis 2010); Utah R. Jud. Admin. 4-903(5). The court's ruling is replete with comparisons of competing evidence and demonstrates the district court's due consideration of the factors listed in Utah Code section 30-3-10 and rule 4-903 of the Utah Rules of Judicial Administration, including the preexisting temporary custody arrangement.[3]

---

3. Father claims that the continuation of a functioning custody arrangement is "a significant factor" in a custody determination. While it is one factor that must be considered, our supreme court has stated that a district court is entitled "to accord no more or no less significance to the existing custody arrangement than it deem[s] appropriate." *Tucker v. Tucker*, 910 P.2d 1209, 1216 (Utah 1996); *cf. id.* at 1215–16 ("A temporary custody order is only that, temporary. It is effective only until a fully informed custody determination can be made . . . . If a temporary order of custody were to be given permanent status . . . no party would ever stipulate to a temporary arrangement."). Here, the district court considered the existing arrangement but, based on its consideration of all relevant factors, concluded that changing the primary custodial parent from Father to Mother was in the best interests of the children.

¶24    Second, Father claims that the court's finding that he took "high quantities" of controlled substances was unsupported by the evidence. However, it does not appear that the court considered this finding as weighing against Father, as the court ultimately concluded that there was *not* "sufficient evidence to conclude that [Father's] use of prescription medications in the last two years since the parties' separation has impaired his parenting, endangered the parties' children, or progressed to the point of addiction or moving on to harder drugs." In its oral ruling, the district court had further explained, "While it is a general concern that people who use the quantity of drugs that [Father] was using can be impaired, there was no evidence brought before the Court that there was impairment on his part that would endanger the children or cause him to not care for them in a manner that they needed to be cared for . . . ." Accordingly, even if the district court erred in making a finding about the degree of Father's drug use, that error was harmless because the district court decided the ultimate issue regarding drug use in Father's favor.

¶25    Finally, it was not an abuse of discretion for the district court to give more weight to Dr. Malovich's testimony than to the testimony of other witnesses, including the parties' son's scout leader, a teacher, a neighbor of Father's, and Father's expert. "[D]eterminations regarding the weight to be given to the testimony of witnesses, including expert witnesses, are within the province of the finder of fact, [and] we will not second guess a court's decisions about evidentiary weight and credibility if there is a reasonable basis in the record to support them." *Barrani v. Barrani*, 2014 UT App 204, ¶ 6, 334 P.3d 994. Aside from his claim of judicial bias, which we have already rejected, Father has not shown that the district court gave inappropriate weight to Dr. Malovich's testimony. Thus, we decline to disturb the court's credibility determinations.

¶26    We therefore conclude that Father has failed to show that the court's findings and decision to award Mother primary custody

of the children were unsupported by the evidence or an abuse of discretion.

### III. We Decline to Award Attorney Fees to Mother.

¶27 Mother claims that she should be awarded attorney fees and costs because Father's brief failed to comply with rule 24(k) of the Utah Rules of Appellate Procedure. "The decision to assess attorney fees under rule 24(k) is a matter of discretion." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 4 n.1, 289 P.3d 369. Despite Father's failure to demonstrate error in the district court's decision, we do not agree with Mother that there is an "utter lack of merit to Father's grounds for appeal." Nor are any technical deficiencies in Father's briefing so egregious as to merit sanctions under rule 24(k). Accordingly, we decline Mother's request for an award of her appellate attorney fees.

### CONCLUSION

¶28 We conclude that the district court judge did not plainly err by not recusing sua sponte and properly exercised its discretion in altering the temporary custody agreement by awarding Mother custody of the children. We therefore affirm.

―――――――